# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| MATTHEW O'WEGER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION |
| v. ) | |
| ) | FILE NO.: 1:14-cv-02076-TCB |
| ) | |
| DEALDASH Inc. a Delaware ) | |
| Corporation, ) | |
| ) | |
| Defendant. ) | JURY TRIAL DEMANDED |
| _____ ) | |

## AGREEMENT AND GENERAL RELEASE

1. **Parties And Released Parties:**

This document sets forth the terms and conditions of the Agreement and General Release (hereinafter "Agreement") by and between the Plaintiff Matthew O'Weger (hereinafter "O'Weger") and DealDash, Inc. (hereinafter "DealDash"), including all of its divisions and affiliates and their current and former officers, directors, employees, shareholders/partners, agents, officials, insurers, and attorneys, in their official and individual capacities, together with their predecessors, successors and assigns, both jointly and severally. The term "Parties" as used herein shall be defined as O'Weger and DealDash. In consideration of the mutual covenants and agreements set forth below, the parties agree as follows:

2. **Termination Of Employment:**

    A. O'Weger agrees and covenants that O'Weger's employment with DealDash ended on or about June 1, 2014.

    B. O'Weger and DealDash agree that, for any references sought by prospective employers for O'Weger, that DealDash shall only provide O'Weger's job position, compensation and dates of employment with DealDash.

1 of 7

3. **Payment And Consideration:**

    A.    DealDash shall pay to O'Weger $9,010 for severance and earned but unpaid vacation plus $11,000 in unpaid overtime plus $3990 in liquidated damages. The amount for O'Weger's severance and overtime shall be paid by DealDash, Inc. in a check made payable to "Matthew O'Weger" and shall be issued within fourteen (14) business days after the Court issues its notice of approval of the settlement of this matter (including this Agreement). The Parties recognize and agree that the back pay portion of the payment to O'Weger is subject to applicable taxes and withholdings. The amount for O'Weger's liquidated damages shall be paid by DealDash, Inc. in one separate check made payable to "Matthew O'Weger and The Morgan Law Firm P.C." and shall be issued within fourteen (14) business days after the Court's notice of approval of the settlement of this matter (including this Agreement).

    B.    Additionally, the Parties have separately agreed that a reasonable attorney fee in this case for O'Weger's counsel is $6,000. The amount for attorney's fees shall be paid by DealDash, Inc. in a separate checks made payable to "The Morgan Law Firm, P.C."

    C    All payments shall be provided to a private contract carrier (such as FedEx or UPS) with a method to track the payment. Payments should be sent to "The Morgan Law Firm, P.C." at 260 Peachtree Street, Suite 1601, Atlanta GA 30303 or other address as provided to DealDash in writing.

    D.    The Parties acknowledge that O'Weger will promptly file the Joint Motion for Court Review and Approval of Settlement Agreement and Dismissal of Case With Prejudice in the form attached to this Agreement as Exhibit A (hereinafter "Joint Motion").

    E.    O'Weger and his counsel acknowledge and agree that, in the event the Court denies the Parties' Joint Motion and the Parties cannot, thereafter, secure court approval of a mutually agreeable settlement agreement within forty-five (45) days of the Court's Order denying the Joint Motion, this Agreement shall be null and void.

4. **Release By Plaintiff:**

    A.    For and in consideration of the total payment specified above and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, O'Weger does knowingly and voluntarily release and forever discharge DealDash from any and all actions, causes of action, suits, debts, dues, sums of money, accounts, damages, judgments, claims and demand whatsoever in law or in equity (hereinafter collectively referred to as "claims"), whether known or unknown which O'Weger ever had, now has or may or might in the future have against DealDash, based on any acts, omissions, transactions or occurrences whatsoever from the date of the beginning of the world to the effective date of this Agreement, and specifically, but not by way of limitation, to those claims arising by reason of or in any way connected with or which are or may

be based in whole or in part on, or do or may arise out of or are or may be related to or with:

    (i)    the matter pending in the Northern District of Georgia – 1:14-CV-02076;
    (ii)    employment of and/or termination of employment between DealDash and O'Weger, including any issues related to payment of wages under the Fair Labor Standards Act;
    (iii)    unlawful acts of any kind arising under or in reliance upon any statute (federal, state or local); and
    (iv)    any and all other claims arising under law or equity.

    B.    Without limiting the generality of the foregoing, O'Weger acknowledges and covenants that, in consideration for the sums being paid and provided herein by DealDash to O'Weger, O'Weger has knowingly and voluntarily relinquished, waived and forever released any and all rights, damages and remedies which might otherwise be available to O'Weger against DealDash, including, without limitation, claims for contract or tort damages of any type, back pay, front pay, emotional damages, mental damages, damages for anguish or anxiety, punitive damages, incentive pay, liquidated damages, special or consequential damages, lost benefits of any kind including without limitation, pension, life insurance, vacation pay, disability insurance, sick pay, severance pay or medical insurance or benefits, recovery of attorneys' fees, costs, expenses of any kind and reemployment or employment with DealDash at any time.

## 5.   Release By DealDash:

    A.    For and in consideration of good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, DealDash does knowingly and voluntarily release and forever discharge O'Weger from any and all actions, causes of action, suits, debts, dues, sums of money, accounts, damages, judgments, claims and demand whatsoever in law or in equity (hereinafter collectively referred to as "claims"), whether known or unknown which DealDash ever had, now has or may or might in the future have against O'Weger, based on any acts, omissions, transactions or occurrences whatsoever from the date of the beginning of the world to the effective date of this Agreement, and specifically, but not by way of limitation, to those claims arising by reason of or in any way connected with or which are or may be based in whole or in part on, or do or may arise out of or are or may be related to or with:

    (i)    the matter pending in the Northern District of Georgia – 1:14-CV-02076;
    (ii)    employment of and/or termination of employment between DealDash and O'Weger;
    (iii)    unlawful acts of any kind arising under or in reliance upon any statute (federal, state or local); and
    (iv)    any and all other claims arising under law or equity.

B.  Without limiting the generality of the foregoing, DealDash acknowledges and covenants that DealDash has knowingly and voluntarily relinquished, waived and forever released any and all rights, damages and remedies which might otherwise be available to DealDash against O'Weger, including, without limitation, claims for contract or tort damages of any type, back pay, front pay, emotional damages, mental damages, damages for anguish or anxiety, punitive damages, incentive pay, liquidated damages, special or consequential damages or recovery of attorneys' fees or costs.

6.  **Full Compensation:**

By signing this Agreement, O'Weger agrees, represents and declares under penalty of perjury that, taking into account the settlement payments identified in Paragraph 3(A), O'Weger has been fully compensated for all hours worked at DealDash (whether regular or overtime hours) and he is due no more compensation (wages or liquidated damages) for any work performed for DealDash.

7.  **Knowing And Voluntary Waiver And Release:**

A.  It is understood and agreed that this Agreement is executed by O'Weger and DealDash knowingly and voluntarily and is not based upon any representations or statements of any kind by any person as to the merits, legal liabilities or value of their claims.

B.  O'Weger and DealDash also acknowledge that no promise or inducement has been offered or made except as set forth in this Agreement.

C.  As part of the consideration for the conditions of the settlement as set forth above, O'Weger and DealDash expressly warrants and represents that: (a) Each is legally competent to execute this Agreement; (b) Neither has assigned, pledged, or otherwise in any manner whatsoever sold or transferred, either by instrument in writing or otherwise, any claim, cause of action, or other legal right of whatever kind and nature, which either O'Weger or DealDash has or may have by reason of the incident described above or any matters arising out of or relating thereto; (c) there are no outstanding subrogation claims or liens of any type or character, by reason of the incident detailed herein.

8.  **Right To Retain Advisor Or Counsel:**

A.  It is understood that the Parties have the right and opportunity to consult fully with legal counsel or other advisor prior to signing this Agreement The Parties also acknowledge that, before signing this Agreement, they have read and fully understand each paragraph thereof.

B.  O'Weger acknowledges that, upon the effective date of this Agreement, O'Weger and DealDash will fully and irrevocably release any and all claims they may have against each other as specified in this Agreement.

9. **Entire Agreement:**

    A. This Agreement constitutes the entire agreement between O'Weger and DealDash pertaining to those subjects contained in it and supersedes all prior and contemporaneous agreements, representations and understandings. It is expressly understood and agreed that this Agreement may not be altered, amended, modified or otherwise changed in any respect or particular manner whatsoever except by a writing duly executed by O'Weger and an authorized representative of DealDash.

    B. In the event a portion of this Agreement is held to be legally invalid by a competent court of law, the invalid portion shall be stricken and all other obligations shall remain valid and mutually binding on the parties and not be affected thereby.

10. **Effective Date:**

This Agreement shall become irrevocable upon its execution by all parties and shall become effective upon approval by the Court.

11. **Non-Admission:**

O'Weger acknowledges that the payment set forth herein does not constitute any admission of liability on the part of DealDash, by whom liability is expressly denied. This Agreement shall not be deemed an admission of liability or a violation of any law, rule, regulation or order, of any kind.

12. **No Possession Of DealDash' Property:**

O'Weger acknowledges and agrees that he does not have any property of DealDash in his possession including, but not limited to, records, files, lists, drawings, documents, equipment, disks, charts, reports, video and audio tapes.

14. **Miscellaneous:**

    A. The Parties acknowledge that they have had sufficient time to consider whether or not they desire to enter into this Agreement.

B.      This Agreement is executed with the full knowledge and understanding on the part of the Parties that there may be more serious consequences, damages or injuries, which are not now known, and that any draft or benefits conferred herein to the Parties in consideration of this Agreement are accepted as final. The Parties further agree and represent that it is within the Parties' contemplation that they may have claims against each other which, at the time of the execution of this Agreement, they has no knowledge or suspicion, but O'Weger and DealDash agree and represent, without affecting the generality of the foregoing paragraphs, that this Agreement extends to all claims in any way based upon, connected with or related to the matters described herein, whether or not known, claimed or suspected by O'Weger or DealDash.

C.      O'Weger covenants that, if O'Weger is subpoenaed or compelled to testify, or provides a written or oral statement of any kind to anyone regarding O'Weger's employment with DealDash, O'Weger will give seven (7) calendar days written advance notice to DealDash by submitting written notice to the below named representative of DealDash by certified mail, return receipt requested.

D.      Nothing in this paragraph or this Agreement is intended to, nor shall it, prohibit the parties from providing testimony or information in any proceeding defined under 18 U.S.C. § 201, nor is it intended in any way to intimidate, coerce, deter, persuade, or compensate any party with respect to providing, withholding, or restricting any communication whatsoever to the extent prohibited under 18 U.S.C. §§ 201, 1503, 1512, or any similar or related provision of state or federal law.

E.      O'Weger agrees to pay federal or state taxes, if any, which are required by law to be paid with respect to this settlement.

F.      O'Weger acknowledges that neither DealDash nor their attorneys make any representation as to the tax consequences, if any, of the provisions of this Agreement. DealDash acknowledges that neither O'Weger nor his attorneys make any representation as to the tax consequences, if any, of the provision of this Agreement.

G.      This Agreement may be executed in multiple counterparts and all counterparts shall constitute one agreement binding on each of the parties hereto, regardless of whether each party hereto is a signatory to the same counterpart. Fax signatures in lieu of original signatures are acceptable.

IN AGREEMENT HERETO, O'Weger and the below representative of DealDash set their hand and seal.

_____  Date   09/03/14
Matthew O'Weger

_____        09/11/14
                                        Date

Representative for DealDash Inc.